IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANTHONY MORENO, | ) | No. CV-F-10-503 OWW/SKO |
| | ) | |
| | ) | MEMORANDUM DECISION GRANTING |
| | ) | PLAINTIFF'S MOTION TO REMAND |
| Plaintiff, | ) | AND DENYING PLAINTIFF'S |
| | ) | REQUEST FOR ATTORNEY'S FEES |
| vs. | ) | (Doc. 22) |
| | ) | |
| | ) | |
| SELECT PORTFOLIO SERVICING, | ) | |
| INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

Before the Court is Plaintiff Anthony Moreno's motion to remand this action to the Tulare County Superior Court.[1]

Plaintiff filed a Verified Complaint for: (1) Fraud, (2) Deceit, (3) Unfair Business Practices under California Business and Professions Code § 17200, (4) Breach of Contract, (5) Declaratory Relief, (6) Specific Performance, and (7) Injunction.

_____

[1] Plaintiff's counsel did not appear at the hearing set for 10:00 a.m. on June 21, 2010. Plaintiff's counsel called the Court after the hearing and explained that he mistakenly believed the hearing was set for 1:30 p.m.

1

Defendants are Select Portfolio Servicing, Inc. ("SPS"), and Does 1-25.  The Complaint alleges:

> 1.  This is a '*trial plan fraud*' case which involves a homeowner who was promised a loan modification, and a Defendant (the Loan Servicing Company), SELECT PORTFOLIO SERVICING, INC. ... that fraudulently, deceptively, maliciously, and oppressively offered a loan modification and then refused to honor the agreement after SIX LOAN PAYMENTS were made under a string of THREE Deceptive Contracts.

Plaintiff is alleged to be a citizen of California and the owner of property at 31866 Road 138 #B, Visalia, California, and SPS is alleged to be a citizen of Utah.  As the "Statement of Facts," the Complaint alleges:

> 9.  Plaintiff fell behind on his loan payments and sought out a loan modification from his loan servicer, SPS.
>
> 10.  On or around July 2009, Plaintiff spoke with a representative of Defendant Loan Servicer, (Mr. Tony Rasmussen - Phone # 801-313-2161), and others in the loss mitigation department, who took Plaintiff's financial information over the phone, including Plaintiff's gross monthly income and monthly expenses, and then explained to Plaintiff that Plaintiff qualified for loan modification given his income, expenses, and hardship, and that all Plaintiff had to do was submit their [sic] financial documentation to SPS to confirm the data given over the phone and a loan modification would be thereafter and in due course provided.
>
> 11.  Following this conversation, and based upon reliance of the statements made by Mr. Rasmussen, (who on information and belief is an employee acting within the course and scope of his employment, and who is authorized by Defendant to make such statements and assertions, which ultimately

proved to be false, deceptive, manipulative, and misleading) Plaintiff did thereby submit his financial documentation to Defendant as requested, including income and expenses and hardship information and all other information requested.

12.   In response to this financial submission, Defendant thereafter, on or around August 6, 2009, did deliver to Plaintiff a 'HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN' (for Investor Loan #412444593).  Again, the true beneficiary/investor has never been identified, but once identified will be added as a defendant to this complaint.

13.   The Modification agreement stated that it had 'an effective date of 9/01/2009).' (See Attached Exhibit 'A' for a true and correct copy of the loan modification agreement which is incorporated herein by reference.

14.   The first paragraph of the contract stated: 'If I am in compliance with this trial period plan ('the Plan') and my representations in Section 1 continue to be true in all material respects THEN THE LENDER WILL PROVIDE ME WITH A HOME AFFORDABLE MODIFICATION AGREEMENT' [sic] AS SET FORTH IN SECTION 3 ... that would amend and supplement the mortgage ... and note.'

15.   Section 3 of the agreement stated: 'If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects THE LENDER WILL SEND ME A MODIFICATION AGREEMENT FOR MY SIGNATURE WHICH WILL MODIFY MY LOAN DOCUMENTS ... ['].

16.   It is not clear by this agreement who the 'Lender' is that SPS is referring to, and the true nature of the investor/beneficiary of the loan has been intentionally concealed.

17.   The Trial Plan agreement also contained Section 1.  'My representations' which contained a list of items Plaintiff certifies in regards to his finances, and his property.

3

18.   The payment under the trial plan agreement was $678.74 per month, and the agreement called for three payments beginning in (/1/09) [sic] and ending 11/01/09.

19.   Plaintiff agreed to the terms and conditions of this loan modification trial plan agreement, and made all three payments in a timely manner as required by the agreement.

20.   Plaintiff executed the loan modification agreement on 8-10-09.

21.   Defendant accepted and cashed each and every payment which finalized the contract by full performance and the alleged loan default was thereby cured.

22.   In making the payments under this agreement, Plaintiff was lead [sic] to believe, informed and intentionally induced to make these three loan payments based on Plaintiff's income and expenses which were submitted to Defendant's representative (which income was approximately $3,800 per month, and monthly expenses which were approximately $3,000 per month) which Plaintiff was deceptively lead [sic] to believe were sufficient for the Obama Making Home Affordable Loan Modification (HAMP).

23.   However, the under the President's HAMP modification program, a borrower does not qualify for a modification if their 'back-end' debt-to-income ratio exceeds 55%.

24.   Plaintiff's back-end debt ratio at the time of this trial plan agreement was approximately 79% which exceeds the guidelines outlined in the President's modification program.

25.   Defendant should have therefore informed Plaintiff that he did not qualify for the HAMP modification program.

26.   The Trial Plan agreement Cover Page [sic] that was also sent to Plaintiff, referenced the President's making Home Affordable Loan Modification Symbol, which

4

was further used as a false inducement to
induce Plaintiff to sign the Loan
Modification Agreement.

27.  Defendant, by and through their [sic]
agents, employees, and contractors, did
therefore make false statements of fact,
which were made to induce Plaintiff's
justifiable reliance that Plaintiff qualified
for a loan modification under HAMP, and that
by sending in three trial plan payments,
Plaintiff would receive an additional
modification agreement.

28.  Plaintiff relied on these false
statements of fact to his detriment, and
suffered damages as a result, including out-
of-pocket expenses, pain and suffering,
mental distress and other damages to be
proven at trial.

29.  To make matters worse, Defendant's [sic]
refused to honor the above-referenced loan
modification, and instead, issued a second
MAKING HOME AFFORDABLE LOAN MODIFICATION
AGREEMENT to Defendant on or around October
7, 2009.

30.  This Second [sic] agreement was similar
to the first agreement, but the 'trial plan'
payments were now nearly doubled to $1,288.98
(on information and belief this was done to
force a default of the loan since Defendant
realized that Plaintiff could afford a
reasonable monthly payment of $678.74 (which
is in line with the 31% front-end ratio
contemplated by HAMP as a reasonable housing
ratio).

31.  The 31% housing ration [sic] must
include and cover principal, interest, tax,
insurance and association dues ('PITIA').

32.  The $1,288.98 payment was for include
[sic] principal and interest (but not tax,
insurance, and/or association dues) and even
at this figure the payment alone creates a
33.98% housing ratio which exceeds the
guidelines set forth under HAMP.

33.  Therefore, the Defendant intentionally

sought to induce Plaintiff to make loan payments that they thought Plaintiff would be unable to afford, and which would result in his default of the mortgage loan.

34.   On information and belief, Defendant is incentivized under certain agreements, including a pooling and servicing agreement, to lead homeowners toward foreclosure, rather than to legitimately modify their loans, and Defendant acted intentionally, fraudulently, intentionally [sic], willfully, wantonly, callously, and with a plan and design to induce Plaintiff into making additional 'trial plan' loan payments, under the guise that they qualified for President Obama's HAMP program when in fact that was blatantly false.

35.   The Trial plan agreement (for this second modification agreement) was executed by Plaintiff on 10/26/09 and the contract was completed by full performance - as was the first agreement - after Plaintiff made the three requested payments in a timely manner.

36.   See Attached 'Exhibit B' for a true and correct copy of the SECOND loan modification agreement which is incorporated herein by reference.

37.   Defendant accepted and cashed each and every payment under this SECOND AGREEMENT which finalized the contract by full performance and the alleged loan default was thereby cured, for the second time.

38.   Plaintiff's material representations as set forth in Section 1 of the loan modifications agreement never changed in any material respect, and Plaintiffs [sic] income and expenses did not materially change during this period of 'bait and switch.'

39.   Instead of honoring either the first or second agreement, which had been fully executed and completed by full performance, Defendant's [sic] once again breached the second agreement as they had breached the first agreement, and failed to provide the agreed-upon modification.

6

40. Defendant has no defense to its failure
to perform its end of the bargain.

41. Both parties provided valuable
consideration for the agreement in that
Defendant agreed to forebear from foreclosure
efforts, and Plaintiff agreed to pay a
reduced loan amount while lead to believe
this would provide a reasonable modification
and thereby forebear from leaving the house
or pursuing a short sale which it [sic] could
have done had they [sic] truthfully been
informed they did not qualify for HAMP.

42. In pouring gasoline on the flame,
Defendant then caused to be issued a THIRD
TRIAL PLAN MODIFICATION AGREEMENT, (on or
around December 29, 2009) which again bears
the *Making Home Affordable* symbol which was
intended to induce Plaintiff's justifiable
reliance that he qualified for a loan
modification, and THREE ADDITIONAL loan
payments were again requested.  See Attached
Exhibit 'C' for a true and correct copy of
the SECOND [sic] loan modification agreement
which is incorporated herein by reference.

43. This is false, deceptive, unfair, and
acted as an anticipatory repudiation of the
earlier contracts.

44. Defendants [sic] therefore have breached
two agreements and have acted in a manner to
intentionally defraud Plaintiff into parting
with their [sic] money.

45. It must be asked, WHAT IS GOING ON HERE?

46. Defendant [sic] acts, omissions, false
representations, breach of contract, and
other deceptive acts and practices are the
proximate cause of Plaintiff's injuries and
although the alleged breach of the loan
documents have been cured, not once but
twice, Defendant has continued to threaten
foreclosure, which acts Plaintiff seeks to
enjoin.

47. On or about November 11, 2009,
Plaintiff, through its [sic] undersigned
counsel, submitted to Defendant a written

7

Qualified Written Request (Under RESPA
Section 6) challenging the application of
trial plan payments. Defendant has
acknowledged the request within 20 days, but
has not otherwise responded except to write
on 12/10/09 'if you have an alleged error in
servicing, we will contact you.' This
clearly violates RESPA and is nonresponsive
to Plaintiff's concerns, and Plaintiff
reserves the right to amend the complaint to
add a RESPA violation.

48. In addition, this letter of 11/11/09
also requested that Defendant identify the
holder to the Note pursuant to Federal trust
in [sic] Lending law (15 U.S.C. 1641(f).
Likewise, the indifferent loan servicer has
failed to respond to which Plaintiff also
reserves the right to amend the complaint
alleging the breach and violation of this
federal statute.

49. This letter also indicated that
Plaintiff, by making additional loan payments
following Defendants [sic] fraud and breach
of the previously mentioned loan agreements,
did not waive their [sic] rights to sue
Defendant for Fraud [sic], breach of
contract, false and deceptive practices,
etc., and such rights have never been waived
at any time. See attached Exhibit 'D' for a
true and correct copy of the 11/19/2009 [sic]
demand letter ....

50. It is clear from the foregoing that
Defendant has absolutely no concern or
interest for the Plaintiff, and in addressing
their [sic] financial hardship, and refuses
to follow various Federal Laws that are
established for the protection of borrowers
across the Country. This has become a
pandemic across the nation which can only be
addressed through a court of law.

51. Defendant owes a duty to modify
Plaintiff's loan in accordance with
California Civil Code Section 2923.6 which
states that the loan servicer has a duty to
all borrower's [sic] in a loan pool.
Plaintiff's loan, on information and belief,
is part of a loan pool of which Defendant

8

1

            profits by servicing loans, some of them
            predatory loans.

2

            52.  WHEREFORE, given the foregoing,
            Plaintiff hereby asserts the following causes
            of action and seeks its [sic] actual,
            compensatory and punitive damages in an
            amount to be proven at trial.

3

4

5

The First Cause of Action is for fraud and alleges that SPS knew

that Plaintiff "did not qualify from [sic] the Obama Making Home

Affordable program because it knew Plaintiff's front-end (housing

ratio) and back-end (debt-to-income ratio) do not meet the

guidelines for Making Home Affordable (HAMP)"; that even though

the guidelines for HAMP were not met, SPS stated to Plaintiff in

July 2009 that Plaintiff did qualify for the HAMP program and

only needed to submit his financial documentation to receive the

modification; that on three occasions Defendant represented that

Plaintiff qualified for a loan modification, when Defendant knew

the representations were false and "were intentionally made to

induce Plaintiff's justifiable reliance (that they [sic]

qualified for a loan modification," that Plaintiff relied on the

representations and suffered "both out-of-pocket, and other

pecuniary damages as well as mental anguish," and that Plaintiff

is entitled to punitive damages.

        The Second Cause of Action is for deceit and makes the same

allegations as the First Cause of Action.

        The Third Cause of Action is for unfair competition in

violation of California Business and Professions Code § 17200 and

alleges that Defendant's acts as set forth herein violate

9

California statutes for Fraud and Deceit and therefore violate California statutes which will serve as the underlying offense for an Unfair Competition and Deceptive Acts and Practices statute," that such acts are "unfair," that "[t]he utility of Defendant's conduct is hard to identify and the hard [sic] to Plaintiff (in potentially losing their [sic] family home) is incredible in comparison" and "'shock the conscience'" and serve no worthwhile purpose other than to harass, intimidate, embarrass, mislead, and defraud Plaintiff of his personal and real property," resulting in Plaintiff's damages and entitling Plaintiff to punitive damages.

        The Fourth Cause of Action is for breach of contract and alleges:

            68.   Defendant offered Plaintiff two separate
            loan modifications (the first on or around
            8/6/09 and the second on or around 10/7/09).

            69.   Defendant [sic] accepted each of these
            offers and fully performed its obligations
            under each agreement by making full and
            complete payments as requested in a timely
            manner.

            70.   Plaintiff's financial condition and
            representations as set forth in *Section 1*. Of
            [sic] each agreement and no time [sic]
            altered or changed in any material respect.

            71.   Each party provided legally sufficient
            consideration as set forth herein and the
            contract is not otherwise illegal or subject
            to non-enforcement.

            72.   Defendant breached its agreements, on
            both occasions, by failing to provide the
            agreed-upon loan modification as set forth in
            the respective agreements.

73.   Defendant has not [sic] defense to such breach, and by submitting each subsequent loan modification offer, Defendant anticipatorily repudiated the earlier agreement.

74.   Such breach of contract has proximately and actually caused Plaintiff's damages (which are foreseeable) and which will be proven at trial.

75.   Plaintiff's Subject Property is his primary residence and is unique.  Money damages will not adequately remedy the breach of contract, and Plaintiff therefore seeks SPECIFIC PERFORMANCE OF THE 8/16/09 agreement.

76.   In addition, Defendants [sic] acts and material omission (and breach of contract) were willful, wanton, intentional, egregious, reckless and oppressive wherefore Plaintiff seeks actual and compensatory damages, as well as exemplary (punitive damages), attorney fees, and costs of suit and other relief deemed just and proper.

The Complaint also seeks declaratory relief "that the original contract of 8/06/09 is fully enforceable, and was breach [sic] by Defendant and that the Court should thereby order Specific Performance of this Agreement to remedy the wrongful and deliberate conduct of Defendant," specific performance of the 8/06/09 loan modification agreement, and injunctive relief to enjoin SPS "to market and/or sell or otherwise convey or transfer the Subject Property without Court approval."  The prayer for relief seeks, *inter alia*, "monetary damages, including actual, and compensatory in an amount no less than $25,000 and in an amount to be proven at trial."

SPS removed the action, stating as grounds in the Notice of

11

1  Removal:

2          1.  This action is a civil action of which
            this Court has original jurisdiction under 28
3          U.S.C. Section 1331, and is one which may be
            removed to this Court by SPS pursuant to the
4          provisions of 28 U.S.C. Section 1441(b) in
            that is arises under the 'Making Home
5          Affordable Loan Modification Program.'
            Supplemental jurisdiction exists with respect
6          to any remaining claims pursuant to 28 U.S.C.
            § 1367.
7
            4.  Alternatively, this action is a civil
8          action of which this Court has original
            jurisdiction under 28 U.S.C. Section 1332,
9          and is one which may be removed to this Court
            by SPS pursuant to the provisions of 28
10         U.S.C. § 1441(b) in that it is a civil action
            between citizens of different states and the
11         manner [sic] in controversy exceeds the sum
            of $75,000.00, exclusive of interests and
12         costs because Plaintiff seeks relief related
            to a loan of the real property subject to the
13         action.

14      Plaintiff moves to remand this action.

15      A.   GOVERNING STANDARDS.

16      The party seeking to invoke removal jurisdiction bears the

17  burden of supporting its jurisdictional allegations with

18  competent proof.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th

19  Cir.1982); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th

20  Cir.1988).  "The propriety of removal thus depends on whether the

21  case originally could have been filed in federal court."  *Chicago*

22  *v. International College of Surgeons*, 522 U.S. 156, 163 (1997);

23  28 U.S.C. § 1441(a).  A court's removal jurisdiction must be

24  analyzed on the basis of the pleadings at the time of removal.

25  *See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers*, 159

26  F.3d 1209, 1213 (9th Cir.1998).  District courts must generally

12

construe the removal statutes strictly against removal and
resolve any uncertainty in favor of remanding the case to state
court.  *Takeda v. Northwestern Nat'l. Life Ins. Co.*, 765 F.2d
815, 818 (9th Cir.1985).

　　　B.  <u>ARTICLE III STANDING</u>.

　　　Plaintiff asserts that remand is required because Plaintiff
"has no 'standing' to invoke federal court jurisdiction and is
not a 'real party in interest' to this action," relying on
Article III to the United States Constitution.  In order to
satisfy Article III's standing requirements, a plaintiff must
show (1) he has suffered an "injury in fact" that is (a) concrete
and particularized and (b) actual or imminent, not conjectural or
hypothetical; (2) the injury is fairly traceable to the
challenged action of the defendants; and (3) it is likely, as
opposed to merely speculative, that the injury will be redressed
by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504
U.S. 555, 560-561 (1992).   Plaintiff contends:

> In this case, SPS has suffered no injury in
> fact, as it is not the owner of Plaintiff's
> loan (rather it is acting as a 'loan
> servicer' on behalf of some unknown lender or
> a *MERS loan* as referenced in Plaintiff's deed
> of trust).  There is absolutely no proof
> offered that Defendant is acting on behalf of
> any 'lender' who has an actual right to
> enforce Plaintiff's loan, or any lender that
> would otherwise have standing to pursue such
> claims in a Bankruptcy court as a legitimate
> 'creditor' of the loan.
>
> Where MERS loans are involved (MERS acts as
> the 'beneficiary' of the loan pursuant to the
> Deed of Trust), it is common knowledge that
> there is likely NO TRUE LENDER than [sic] can

1    **PROVE THEY HAVE THE RIGHT TO ENFORCE** the debt
     alleged to be owed to that particular
2    creditor.  Consequently, before this Court
     can/should hear this case, Plaintiff should
3    be required to identify the 'lender' of this
     loan (the true *'real party in interest"*) and
4    the Court should require this lender, if such
     exists, to prove it has an original copy of
5    Plaintiff's promissory note with proper
     endorsements and assignment of the deed of
6    trust.

7  Plaintiff contends that without proof that SPS is a valid agent

8  of the lender:

9         SPS has absolutely no standing to seek
          Federal Court jurisdiction, and has no
10        grievance to redress, has suffered no injury
          in fact, and is not a *real party in interest*
11        to this action (See F.R.C.P. 17 which states
          that '*an action must be prosecuted in the*
12        *name of the real party in interest*), but
          rather Defendant seeks to advance *third party*
13        *standing* on behalf of some unknown and
          unidentified lender, which attempt herein to
14        invoke federal court jurisdiction should be
          denied.

15

16    Plaintiff seriously misunderstands Article III and cites no

17  authority that removal is precluded based on the contention that

18  the removing *Defendant* must have Article III standing.

     Plaintiff's motion to remand on this ground is DENIED.

19        C.   <u>DIVERSITY JURISDICTION - AMOUNT IN CONTROVERSY</u>.

20        Plaintiff moves to remand this action to the extent removal

21  is based on diversity of citizenship, contending that SPS cannot

22  establish that the amount in controversy "exceeds the sum or

23  value of $75,000, exclusive of interests and costs," the

24  jurisdictional minimum.  28 U.S.C. § 1332(a).

25        "[W]here a plaintiff's state court complaint does not

26

                                    14

specify a particular amount of damages, the removing defendant

bears the burden of establishing, by a preponderance of the

evidence, that the amount in controversy exceeds [$75,000].

Under this burden, the defendant must provide evidence

establishing that it is 'more likely than not' that the amount in

controversy exceeds that amount." *Sanchez v. Monumental Life*

*Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  In *Valdez v.*

*Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.2004), the Ninth

Circuit remanded for a determination of the amount in controversy

where the only discrete sum requested in the complaint was

"general damages ... in excess of $50,000.00:

> Since '[it] [was] not facially evident from the
> complaint that more than $75,000 [was] in
> controversy,' Allstate should have 'prove[n],
> by a preponderance of the evidence, that the
> amount in controversy [met] the
> jurisdictional threshold.' ... Allstate did
> not.  Its only effort was the statement in
> its 'Petition for Removal' that 'upon
> information and belief, [it] submit[s] that
> the amount in controversy ... exceeds
> $75,000.00.'  '[I]nformation and belief'
> hardly constitutes proof 'by a preponderance
> of the evidence.' ... To discharge its
> burden, Allstate needed to 'provide evidence
> establishing that it is "more likely than
> not" that the amount in controversy exceeds
> that amount.' ....
>
> ... [W]e reiterate that the amount-in-
> controversy inquiry in the removal context is
> not confined to the face of the complaint ...
> Nor does it present an insurmountable
> obstacle to quantify the amount at stake when
> intangible harm is alleged; the parties need
> not predict the trier of fact's eventual
> award with one hundred percent accuracy ...
> Instead, '[a]lthough we have not addressed
> the types of evidence defendants may rely
> upon to satisfy the preponderance of the

15

evidence test for jurisdiction, we have endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."' ...

*See also Conrad Associates v. Hartford Acc. & Indem. Co.*, 994 F.Supp. 1196, 1198-1199 (N.D.Cal. 1998):

> In cases in which the existence of diversity jurisdiction depends on the amount in controversy, '[t]he district court may consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy.' *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1987), citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995). If the complaint is silent on the amount of damages claimed, 'the court may consider facts in the removed petition and may "require the parties to submit summary-judgment type evidence relevant to the amount in controversy at the time of removal.' Singer, 116 F.3d at 377. A speculative argument regarding the potential value of the award is insufficient. Id. at 376; *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992). The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorneys' fees, if recoverable by statute or contract, and punitive damages, if recoverable as a matter of law. See *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447 (S.D.Cal. 1995) ....

Plaintiff, noting that the Complaint seeks*, inter alia*, "monetary damages, including actual, and compensatory in an amount no less than $25,000 and in an amount to be proven at trial," and that the Notice of Removal merely states that "the manner [sic] in controversy exceeds the sum of $75,000.00, exclusive of interests and costs because Plaintiff seeks relief related to a loan of the real property subject to the action,"

16

1   contends that SPS has not established that the amount in

2   controversy exceeds the statutorily required amount.   Plaintiff

3   asserts that the gravamen of his Complaint is that SPS

4   fraudulently induced Plaintiff to enter into loan modification

5   agreements, that SPS breached the agreement it provided to

6   Plaintiff and should be liable for breach of contract and

7   specific performance, and that it should not be entitled to

8   foreclose on Plaintiff's property.   Plaintiff argues:

9           [T]he fact that this case is 'related to a
            loan' (modification agreement) which by its
10          terms was to reduce Plaintiff's monthly
            payment, this still does not create a
11          situation wherein the $75,000 amount in
            controversy requirement can be automatically
12          and certainly satisfied.   Even if Plaintiff
            were to receive its reduced loan payment, it
13          is not clear how loan [sic] Plaintiff would
            actually maintain such loan as modified (for
14          example the agreement could be specifically
            enforced, and the loan modification reduced
15          payment be applied, but yet Plaintiff might
            only retain the property for a year or so, as
16          an example).   Such reduced payments for a one
            year period also fail to reach a $75,000
17          amount in controversy requirement and any
            such argument by Defendant in this regard
18          would be purely speculative and would confer
            no subject matter jurisdiction.

19
20          SPS argues that the amount in controversy is satisfied

21   because Plaintiff is seeking relief regarding a loan in the

22   principal amount of $448,000.00 by seeking an injunction to

23   enjoin any foreclosure sale of the property:

            An injunction of a foreclosure sale on the
24          Property would prevent the lien holder from
            obtaining a payoff by way of the security.
25          Here, Plaintiff admits he defaulted on a 2007
            loan in 2009.   Thus, Plaintiff is seeking to
26          prevent SPS from pursuing exercising [sic]

                              17

1                its right under the deed of trust to collect
2                the entirety of the $448,000.00 loan through
                the security.

3  SPS refers to its Request for Judicial Notice filed in support of

4  its motion to dismiss and strike.  Exhibit C is a deed of trust

5  recorded on Plaintiff's property on February 26, 2007 securing a

6  loan of $440,000.00 from New Century Mortgage Company.  Exhibit D

7  is a deed of trust and request for notice of default recorded

8  against Plaintiff's property on February 26, 2007 securing a loan

9  of $56,000.00 from New Century Mortgage Company.  SPS notes that

10  the Complaint alleges that Plaintiff "fell behind on his loan

11  payments and sought out a loan modification from his loan

12  servicer, SPS."

13     SPS has not established by a preponderance of the evidence

14  that the amount in controversy exceeds $75,000.00.  Plaintiff's

15  motion to remand on this ground is GRANTED.

16     D.  <u>FEDERAL QUESTION JURISDICTION</u>.

17     Plaintiff moves to remand on the ground that his Complaint

18  alleges no federal question over which this Court may exercise

19  subject matter jurisdiction.

20     SPS argues that federal claims are alleged in the Complaint

21  that support federal question jurisdiction.  SPS relies on the

22  allegations in Paragraphs 47-48:[2]

23        47.  On or about November 11, 2009,

24  _____

25     [2]SPS does not argue that the Home Affordable Modification
    Program raises federal question jurisdiction.  The HAMP is
26  described in *Williams v. Geithner*, 2009 WL 3757380 at *1-3
    (D.Minn., Nov. 9, 2009).

Plaintiff, through its [sic] undersigned
counsel, submitted to Defendant a written
Qualified Written Request (Under RESPA
Section 6) challenging the application of
trial plan payments.  Defendant has
acknowledged the request within 20 days, but
has not otherwise responded except to write
on 12/10/09 'if you have an alleged error in
servicing, we will contact you.'  This
clearly violates RESPA and is nonresponsive
to Plaintiff's concerns, and Plaintiff
reserves the right to amend the complaint to
add a RESPA violation.

48.  In addition, this letter of 11/11/09
also requested that Defendant identify the
holder to the Note pursuant to Federal trust
in [sic] Lending law (15 U.S.C. 1641(f).
Likewise, the indifferent loan servicer has
failed to respond to which Plaintiff also
reserves the right to amend the complaint
alleging the breach and violation of this
federal statute.

Plaintiff argues that the Complaint does not allege any

claim involving a federal right.  Plaintiff cites *Lippett v.*

*Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1042 (9th

Cir.2003):

[T]he artful pleading doctrine allows federal
courts to retain jurisdiction over state law
claims that implicate a substantial federal
question.  A state law claim falls within
this ... category when: (1) 'a substantial,
disputed question of federal law is a
*necessary* element of ... the well-pleaded
state claim,' ... or the claim is an
'inherently federal claim' articulated in
state-law terms.

Plaintiff asserts that he has not alleged any federal questions

and has not raised any causes of action relying on any federal

law.  Plaintiff contends that "[a]n important corollary to the

well-established well-pleaded complaint rule is that the

19

essential federal element of the plaintiff's complaint must be supported under one construction of federal law and defeated under another."  Plaintiff cites *Bauchelle v. AT&T Corp.*, 989 F.Supp. 636, 641 (D.N.J.1997):

> If a disputed question of federal law exists as part of Plaintiff's state law cause of action, federal question jurisdiction might still be found.  In such a circumstance, the existence of a 'substantial, disputed question of federal law' is a threshold issue to support federal question jurisdiction ... A federal question is substantial when the federal issue is decisive because vindication of rights depends on construction of federal law ... Jurisdiction exists 'only if that question also "is a *necessary element* of one of the well-pleaded state claims."' ... A substantial disputed federal question, however, is insufficient by itself to confer jurisdiction.  Thus, where Plaintiff's causes of action are created by state law, and no disputed question of federal law is a necessary element of one of those state law claims, there is no federal jurisdiction over the matter.

The conditions for federal question jurisdiction were set out by the Supreme Court in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  Those conditions are that the claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state responsibilities."  *Id.* at 314.  Deciding if there is federal jurisdiction is determined by analyzing Plaintiff's complaint.  "Whether the complaint states a claim arising under federal law must be ascertained by the legal construction of [the plaintiff's] allegations, and not by the

effect attributed to those allegations by the adverse party."
*Ultramar America Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir.1990).

Although the Complaint does not allege any federal causes of action, SPS argues that it could be found to have waived its right to remove this action if it waited until Plaintiff actually amended his complaint to state causes of action for violations of RESPA and TILA.

28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action... shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action ... is based, or within thirty days after the service of summons upon the defendant is such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through summons or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title [diversity of citizenship] more than 1 year after commencement of the action.

"A party ... may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his

21

1   or her right to a federal forum."  *Resolution Trust Corp. v.*

2   *Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir.1994).  "However,

3   [for there to be a waiver,] it must [have] be[en] unequivocally

4   apparent that the case [was] removable [before the defendant

5   engaged in the litigation conduct], [] the intent to waive the

6   right to remove to federal court and to submit to state court

7   jurisdiction must [have been] clear and unequivocal, and the

8   defendant's actions must be inconsistent with the right to

9   remove."  16 Moore's Federal Practice § 107.18[3][a].

10        Given these standards, Plaintiff's Complaint does not assert

11   any federal claims.  Although the Complaint refers to potential

12   violations of RESPA and TILA, the Complaint does not actually

13   allege that these federal statutes have been violated; rather,

14   the Complaint suggests that they may have been and that Plaintiff

15   might seek leave to amend to assert such claims.  Whether or not

16   SPS violated RESPA or TILA is not an essential element of any of

17   Plaintiff's state law causes of action.  SPS's concern that its

18   failure to remove the action based on the allegations in

19   Paragraphs 47-48 would result in the waiver of its right to

20   remove is misplaced because it is not unequivocally clear from

21   these allegations that the action is removable on the ground of

22   federal question subject matter jurisdiction.  If, following

23   remand of this action, Plaintiff amends his complaint to allege

24   violations of RESPA, TILA, or any other applicable federal law,

25   SPS can file a successive notice of removal based on these

26   federal questions within the time period set forth in Section

1446(b).  *See* 16 Moore's Federal Practice, § 107.30[4]; *Mattel, Inc. v. Bryant*, 441 F.Supp.2d 1081, 1089 (C.D.Cal.2005), *aff'd*, 446 F.3d 1011 (9th Cir.2006).

Plaintiff's motion to remand on this ground is GRANTED.

**E.   ATTORNEY'S FEES.**

Plaintiff couples his motion to remand with a request for its attorneys' fees in connection with the motion to remand. Plaintiff does not assert any specific amount of attorney's fees or provide any documentation supporting this request.

28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The decision to award such fees is within the district court's discretion and does not require a finding of bad faith removal because the purpose of such an award is not punitive, but rather to reimburse a plaintiff for wholly unnecessary litigation costs caused by defendant. *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446-447 (9th Cir. 1992).  A court may award attorney's fees when removal is wrong as a matter of law. *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 864 (9th Cir.2003). However, "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).[3]

---

[3]SPS miscited this case as *Martin v. First Franklin Capital Corp.*, 536 U.S. 132 (2005).

23

1    Plaintiff argues that his attorney's fees should be awarded

2  for SPS's "knee-jerk improvident removal which appears designed

3  to consume Plaintiff's time, money, and resources, and delay this

4  case from being heard on its merit in Tulare Superior Court."

5    However, as SPS responds, based on the Notice of Removal and

6  its opposition to the motion to remand, "it is clear that at a

7  minimum, SPS has an objectively reasonable basis for removing

8  this matter in light of Plaintiff's allegations regarding

9  violations of federal laws and relief requesting amounts in

10 excess of $75,000.00."  Plaintiff's request for attorney's fees

11 pursuant to Section 1447(c) is DENIED.

12                            <u>CONCLUSION</u>

13    For the reasons stated:

14    1.   Plaintiff's motion to remand is GRANTED and Plaintiff's

15 request for attorney's fees is DENIED;

16    2.   Counsel for Plaintiff shall prepare and lodge a form of

17 order consistent with this Memorandum Decision within five (5)

18 court days following service of this Memorandum Decision.

19    IT IS SO ORDERED.

20 Dated:   <u>June 23, 2010</u>            <u>/s/ Oliver W. Wanger</u>
                                     UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

                                24